605 N.E.2d 518 (1992)
152 Ill.2d 489
178 Ill.Dec. 724
The PEOPLE of the State of Illinois, Appellant,
v.
O.C. SHEPHARD, a/k/a O.C. Shepherd, a/k/a O.C. Shepard, Appellee.
No. 72085.
Supreme Court of Illinois.
October 22, 1992.
*520 Roland Burris, Atty. Gen., Springfield, Jack O'Malley, State's Atty., Chicago (Terence M. Madsen, Asst. Atty. Gen., Chicago, and Renee Goldfarb and Donald J. Mizerk, Asst. State's Attys., of counsel), for the People.
Rita A. Fry, Asst. Public Defender, Chicago (Timothy J. Leeming, Asst. Public Defender, of counsel), for appellee.
*521 Justice FREEMAN delivered the opinion of the court:
Defendant, O.C. Shephard, was charged with offenses that related, inter alia, to drug possession. Prior to trial, the circuit court of Cook County ruled that a penalty enhancement statute was unconstitutional as applied in certain cases. The State appeals directly to this court (134 Ill.2d R. 603), and we reverse.

BACKGROUND
The record contains the following pertinent facts. On January 10, 1991, pursuant to a search warrant, Chicago police officers searched an apartment in a Chicago Housing Authority development located at 3919 South Federal Street. The apartment was registered to defendant and a friend. The officers found 41.16 grams of heroin and 3.42 grams of cocaine. The officers also found two shotguns and a pistol.
Defendant was charged in a four-count information with possessing between 15 and 100 grams of heroin and between 1 and 15 grams of cocaine, with the intent to deliver within 1,000 feet of Chicago Housing Authority property. (Ill.Rev.Stat.1989, ch. 56½, pars. 1401(a)(1)(A), (c)(2), 1407(b).) Defendant was also charged with armed violence (Ill.Rev.Stat.1989, ch. 38, par. 33A-2) and the unlawful use of a weapon by a felon (Ill.Rev.Stat.1989, ch. 38, par. 24-1.1).
The State charged that defendant not only possessed the narcotics with the intent to deliver (Ill.Rev.Stat.1989, ch. 56½, pars. 1401(a)(1)(A), (c)(2)), but also that those acts occurred within 1,000 feet of Chicago Housing Authority property (Ill.Rev.Stat. 1989, ch. 56½, par. 1407(b)). Section 407 of the Act enhances the penalties for violations of section 401 when committed under various circumstances. Ill.Rev.Stat.1989, ch. 56½, pars. 1401, 1407.
Prior to trial, the trial court granted defendant's motion to dismiss the enhancement charge. The court ruled that section 407(b) of the Illinois Controlled Substances Act (the Act) (Ill.Rev.Stat.1989, ch. 56½, par. 1407(b)) was unconstitutional as applied to public housing. The court found that the statute denied drug offenders the equal protection of the laws. (U.S. Const., amend. XIV; Ill. Const.1970, art. I, § 2.) The State appeals.

OPINION

I. Statutory Interpretation
Prior to addressing the issues raised on appeal, we are compelled to construe the statutory provisions that defendant was charged with violating. Several amendments to sections 401 and 407 of the Act conflict and require interpretation. We address this preliminary issue sua sponte, and we note that it does not affect our disposition of the issues raised on appeal.
As previously stated, on January 10, 1991, defendant was charged with violating sections 401(a)(1)(A) and 407(b) of the Act with respect to the heroin and sections 401(c)(2) and 407(b) with respect to the cocaine. After examining these provisions as they appeared in the 1989 Illinois Revised Statutes, we come to several conclusions.
First, based on its plain language, we conclude that section 407(b) did not enhance the heroin violation provided by section 401(a)(1)(A). At the time defendant possessed the heroin, section 407(b)(1) expressly referred to a violation of "Subsection (b) of Section 401." (Ill.Rev.Stat.1989, ch. 56½, par. 1407(b)(1).) However, defendant's possession of the heroin was made criminal by section 401(a)(1)(A). (Ill.Rev. Stat.1989, ch. 56½, par. 1401(a)(1)(A).) Thus, defendant's alleged conduct did not constitute an offense under section 407(b). Therefore, we hold that defendant was not chargeable with any violation of section 407 with respect to the possession of heroin.
Second, we conclude that a conflict exists between section 401 as amended by Public Acts 86-266 and 86-442, and section 401 as amended by Public Act 86-604. (Ill.Rev. Stat.1989, ch. 56½, par. 1401.) Public Acts 86-266 and 86-442 added to section 401 a new and different subsection (b) than had previously existed in section 401 and re-lettered the former subsections (b) through (g) thereof as subsections (c) through (h). *522 The new subsection (b) added to section 401 by Public Acts 86-266 and 86-442 merely established fines for certain violations of subsection (a). The new section 401(c)(2), which was the former section 401(b)(2), provided essentially that a violation of section 401 through, inter alia, the possession with intent to deliver between 1 and 15 grams of any substance containing cocaine was a Class 1 felony. Pub.Act 86-266, § 1, eff. Jan. 1, 1990 (1989 Ill.Laws 1893); Pub. Act 86-442, § 1, eff. Jan. 1, 1990 (1989 Ill.Laws 2681) (both amending Ill.Rev.Stat. 1989, ch. 56½, par. 1401).
In contrast to Public Acts 86-266 and 86-442, Public Act 86-604 amended only, in part, the language of sections 401(a)(7) and (b)(7) as those subsections read prior to the changes made by Public Acts 86-266 and 86-442. In so doing, Public Act 86-604 repeated the remaining provisions of section 401 as they read prior to the changes made by Public Acts 86-266 and 86-442. Consequently, Public Act 86-604 did not add a new subsection (b) to section 401 and did not re-letter subsections (b) through (g) of section 401 as they read prior to the changes made by Public Acts 86-266 and 86-442. Pub.Act 86-604, § 1, eff. Jan. 1, 1990 (1989 Ill. Laws 3295) (amending Ill. Rev.Stat.1989, ch. 56½, par. 1401).
The changes to section 401 made by Public Acts 86-266 and 86-442 and the changes to that section made by Public Act 86-604 conflict. Further, this conflict causes a problem in this case due to the contents of section 407(b) of the Act as it appeared at the time of the alleged offense. Section 407(b)(1) provided as follows:
"(b) Any person who violates: (1) Subsection (b) of Section 401 in any school or residential property owned, operated and managed by a public housing agency or public park, on the real property comprising any school or residential property owned, operated and managed by a public housing agency or public park or on any public way within 1,000 feet of the real property comprising any school or residential property owned, operated and managed by a public housing agency or public park is guilty of a Class X felony, the fine for which shall not exceed $500,000." (Ill.Rev.Stat.1989, ch. 56½, par. 1407(b)(1).)
Thereafter, sections 407(b)(2) through (b)(6) referred and corresponded to sections 401(c) through (g).
The problem caused by the conflicting amendments to section 401 is that if the legislature intended for the changes made by Public Acts 86-266 and 86-442 to control, the failure to simultaneously amend section 407 to correspond to section 401 would render section 407(b)(1) superfluous.
Section 407(b)(1) states essentially that a violation of section 401(b) under certain circumstances was a Class X felony. Section 407(b)(1) would be rendered superfluous because section 401(b), as amended by Public Acts 86-266 and 86-442, merely provided that certain violations of subsection (a) were subject to certain fines. Obviously, a provision that merely imposes a fine cannot be "violated." To avoid that result, we would, without any further indication of the legislature's intent, have to give effect to the amendment of section 401 by Public Act 86-604.
However, in light of the recent amendment of sections 401 and 407 by Public Act 87-754, effective September 29, 1991, we need not do so. (Pub.Act 87-754, eff. Sept. 29, 1991 (1991 Ill.Laws 3943).) When confronted with problems that arise when the legislature passes two or more bills at the same session which pertain to the same subject or amend the same statute, the ultimate question is the intent of the legislature, as in all cases of statutory construction. The entire legislative record, including acts passed at subsequent sessions, is open to ascertain the legislative intent. Once ascertained, it will be given effect. People ex rel. Dickey v. Southern Ry. Co. (1959), 17 Ill.2d 550, 554-55, 162 N.E.2d 417.
We conclude that Public Act 87-754 is a clear expression of the legislature's intent with respect to the operative contents of sections 401 and 407 of the Act at the time of the alleged offense. In Public Act 87-754, the legislature amended section 401, as amended by Public Acts 86-266 *523 and 86-442, consistently with the amendment by Public Act 86-604, and thereafter deleted Public Act 86-604. More importantly, the legislature also amended section 407 consistently with section 401 as amended by Public Acts 86-266 and 86-442. Specifically, the legislature amended section 407(b)(1) to refer to a violation of section 401(c) rather than section 401(b), and to correspond the remaining subsections of section 407 to the new subsections of section 401. In other words, sections 407(b)(2) through (b)(6) were amended to refer and correspond to sections 401(d) through (h). Ill.Rev.Stat.1991, ch. 56½, pars. 1401, 1407.
The legislature has clearly expressed its intent through Public Act 87-754 with respect to the operative contents of sections 401 and 407. Further, this court has the authority to insert into a statute language omitted through legislative oversight. (People v. Chandler (1989), 129 Ill.2d 233, 253, 135 Ill.Dec. 543, 543 N.E.2d 1290.) Therefore, we hold that defendant was chargeable, and was properly charged, with a violation of section 407(b)(1) in addition to section 401(c)(2) with respect to the possession of cocaine.

II. Constitutionality of Section 407(b)
The trial court found that section 407(b) of the Act, as applied to public housing, denied drug offenders the equal protection of the laws and, therefore, was unconstitutional. See U.S. Const., amend. XIV; Ill. Const.1970, art. I, § 2.
We initially note that defendant misperceives the nature of the classification created by section 407(b) of the Act. Defendant contends that section 407(b) punishes offenders who live in public housing more severely than those who can afford to live in nonpublic housing. Thus, defendant reasons, the classification is based on a defendant's ability to live in nonpublic housing and not on his or her conduct.
However, a cursory reading of section 407(b) shows that the residence and wealth of a drug offender are simply irrelevant to the offender's susceptibility to prosecution under section 407(b). The statute does not regard where a drug offender lives; it regards only where a drug offense occurs.

A. General Principles

Initially, we note our presumption that all statutes are constitutional. Based on this presumption, the party challenging the statute in question has the burden of clearly establishing the alleged constitutional violations. It is a court's duty to construe a statute so as to affirm the statute's constitutionality and validity, if reasonably possible. Further, if the statute's construction is doubtful, a court will resolve the doubt in favor of the statute's validity. People v. Hamm (1992), 149 Ill.2d 201, 208-09, 172 Ill.Dec. 179, 595 N.E.2d 540 (and cases cited therein).
This court uses the same analysis in assessing equal protection claims under both the United States and Illinois Constitutions. The guarantee of equal protection requires that government deal with "`similarly situated'" individuals in a similar manner. (People v. Reed (1992), 148 Ill.2d 1, 7, 169 Ill.Dec. 282, 591 N.E.2d 455, quoting Jenkins v. Wu (1984), 102 Ill.2d 468, 477, 82 Ill.Dec. 382, 468 N.E.2d 1162.) The equal protection clauses of the United States and Illinois Constitutions do not deny the State the power to draw lines that treat different classes of persons differently. (Hamm, 149 Ill.2d at 209, 172 Ill.Dec. 179, 595 N.E.2d 540; Reed, 148 Ill.2d at 7, 169 Ill.Dec. 282, 591 N.E.2d 455.) However, the guarantee of equal protection prohibits the State from according unequal treatment to persons placed by a statute into different classes for reasons wholly unrelated to the purpose of the legislation. Reed, 148 Ill.2d at 7, 169 Ill.Dec. 282, 591 N.E.2d 455.
Illinois courts use two standards of judicial review to ensure that the State has not arbitrarily exercised its power to classify. Courts apply strict scrutiny to "suspect" classifications, such as those based on race, and to classifications that impinge on fundamental constitutional rights. (Reed, 148 Ill.2d at 7, 169 Ill.Dec. 282, 591 N.E.2d 455; People ex rel. Tucker v. Kotsos (1977), 68 Ill.2d 88, 96-97, 11 Ill.Dec. 295, 368 N.E.2d 903.) A law will *524 not survive strict scrutiny unless it is necessary to promote, and is narrowly tailored to serve, a compelling State interest. Reed, 148 Ill.2d at 7, 169 Ill.Dec. 282, 591 N.E.2d 455.
A law that does not implicate either a suspect classification or a fundamental right is subject to rational basis review. Under the rational basis test, a statutory classification need only be rationally related to a legitimate State goal. (Reed, 148 Ill.2d at 7-8, 169 Ill.Dec. 282, 591 N.E.2d 455; Tucker, 68 Ill.2d at 96-97, 11 Ill.Dec. 295, 368 N.E.2d 903.) In other words, a statute must have only a rational basis for distinguishing the class to which the law applies from the class to which the law does not apply. Hamm, 149 Ill.2d at 209, 172 Ill.Dec. 179, 595 N.E.2d 540; Reed, 148 Ill.2d at 9, 169 Ill.Dec. 282, 591 N.E.2d 455.

B. Strict Scrutiny

On appeal, defendant notes that section 407(b) imposes longer prison sentences on persons who commit drug offenses within 1,000 feet of public housing than on persons who commit the same offenses beyond 1,000 feet of public housing. Defendant reasons that "[w]hile those offenders are serving their time in prison they are necessarily deprived of their liberty interests." Defendant posits that his personal liberty is a fundamental right. Therefore, defendant concludes, we must subject section 407(b) to strict scrutiny.
We cannot accept defendant's contention. Courts have repeatedly addressed similar arguments for many years. The principles are quite established. A fundamental right for the purpose of equal protection analysis consists of a right that lies "at the heart of the relationship between the individual and a republican form of nationally integrated government." (Tucker, 68 Ill.2d at 97, 11 Ill.Dec. 295, 368 N.E.2d 903.) In other words, a fundamental right is simply a right that is explicitly or implicitly guaranteed by either the Federal or State Constitution. 16B C.J.S. Constitutional Law § 714, at 520-21 (1985).
Of course, both the United States and Illinois Constitutions guarantee "liberty." (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2.) This court has repeatedly held that "liberty," as that term is used in both constitutions, means not only freedom of citizens from servitude and restraint. The term is deemed to embrace the right of every person to be free in the use of his or her powers, faculties, and property, in such lawful ways as he or she may choose, "subject only to such restraints as are necessary to secure the common welfare." City of Ml. Vernon v. Julian (1938), 369 Ill. 447, 454, 17 N.E.2d 52 (and cases cited therein); accord 16A Am.Jur.2d Constitutional Law §§ 553, 554 (1979).
However, the right to liberty, guaranteed by both constitutions, is not natural liberty, which is entirely unrestrained. Rather, the constitutions guarantee civil liberty, which is defined as natural liberty restrained by human laws only as is necessary and expedient for the general welfare. Lindsay v. Lindsay (1913), 257 Ill. 328, 335, 100 N.E. 892 (and authorities cited therein).
In other words, the rights of the individual are not absolute. Rather, those rights are subject to the exercise of the regulatory powers of government. The State may enact laws that regulate, restrain, and prohibit, although such regulation, restraint, or prohibition interferes with, curtails, or diminishes personal rights. People v. Brown (1941), 175 Misc. 989, 993, 27 N.Y.S.2d 241, 245, aff'd (1941), 287 N.Y. 154, 38 N.E.2d 478; accord Booth v. Illinois (1902), 184 U.S. 425, 428-29, 22 S.Ct. 425, 426, 46 L.Ed. 623, 626, aff'g (1900), 186 Ill. 43, 57 N.E. 798; 16A Am.Jur.2d Constitutional Law § 555 (1979).
Based on these principles, at least one court has specifically held that "a general right to absolute liberty is not among the fundamental rights recognized by the [United States] Supreme Court for purposes of strict scrutiny analysis under the equal protection clause." (In re L.M. (D.C. 1981), 432 A.2d 692, 693.) True, the right of a citizen to his or her personal liberty "is one of those elementary facts which lie at the foundation of our political structure." (Johnson v. Jones (1867), 44 Ill. 142, 147.) *525 However, the citizen is guaranteed the right to liberty "except when restrained of it upon a charge of crime, and for the purpose of judicial investigation, or under the command of the law as pronounced through a judicial tribunal." Johnson, 44 Ill. at 147; accord 16A Am.Jur.2d Constitutional Law § 555, at 466-67 (1979).
Based on these principles, we hold that personal liberty, when deprived by lawful incarceration, is not a fundamental right for purposes of equal protection analysis. Thus, strict scrutiny of a criminal statute is not appropriate when the only consequence of the statutory classification involves confinement as a result of a lawful conviction. Accordingly, in the case at bar, we will subject section 407(b) of the Act to rational basis review.

C. Rational Basis

Under the rational basis test, a court's review of a legislative classification is limited and generally deferential. (Tucker, 68 Ill.2d at 96-97, 11 Ill.Dec. 295, 368 N.E.2d 903.) The legislature, under the State's police power, has wide discretion to classify offenses and prescribe penalties for those offenses. (People v. La Pointe (1981), 88 Ill.2d 482, 500, 59 Ill.Dec. 59, 431 N.E.2d 344.) Thus, if any state of facts can reasonably be conceived to justify the enactment, it must be upheld. Reed, 148 Ill.2d at 8, 169 Ill.Dec. 282, 591 N.E.2d 455, citing La Pointe, 88 Ill.2d at 500, 59 Ill. Dec. 59, 431 N.E.2d 344.
Further, it is settled that the State may direct a law against what it considers to be a problem as it actually exists; the law need not cover the whole field of possible abuse. Taking one step at a time, the State may enact a law that addresses the area of concern that seems most acute to the legislature. (Hamm, 149 Ill.2d at 211, 172 Ill.Dec. 179, 595 N.E.2d 540 (and cases cited therein).) Specifically, "this court has upheld classifications against equal protection challenges when the situs of the crime warranted a stricter penalty." People v. M.A. (1988), 124 Ill.2d 135, 143, 124 Ill.Dec. 511, 529 N.E.2d 492.
Applying these principles to the case at bar, we conclude that a rational basis exists for the classification created by section 407(b) of the Act as applied to public housing. We agree with the State that the purpose of the law was simply to deter narcotics activity in public housing, an area where the impact of this evil has been severe. Further, providing a more severe penalty for such conduct is a reasonable means of accomplishing such deterrence.
The trial court found no rational basis for punishing persons who commit drug offenses within 1,000 feet of public housing more severely than those who commit drug offenses beyond 1,000 feet of public housing. The court posited that the enhancement of the penalty "does not do anything to eliminate" the drug evil existing in public housing.
Whether a statute is wise or unwise, and whether it is the best means to achieve the desired results, are among the matters for the legislature and not the courts. A difference of opinion is insufficient to bring the classification to a court's attention. (M.A., 124 Ill.2d at 142, 124 Ill.Dec. 511, 529 N.E.2d 492.) We hold that section 407(b) of the Act as applied to public housing does not deny drug offenders the equal protection of the laws.
For the foregoing reasons, the judgment of the circuit court of Cook County is reversed, and the cause remanded for further proceedings.
Reversed and remanded.